30

Argued July 28, affirmed in part; reversed in part and remanded
September 18, petition for rehearing denied October 11,
1972, petition for review denied January 4, 1973

BRADY, *Respondent, v.* CALLOWAY (No. 73513),
*Appellant.*

501 P2d 72

*John W. Osburn,* Solicitor General, Salem, argued the cause for appellant. With him on the briefs were Lee Johnson, Attorney General, and Robert L. Misner, Assistant Attorney General, Salem.

*Thomas H. Tongue,* Portland, argued the cause for respondent. With him on the brief were Morrison, Bailey, Dunn, Cohen & Miller, Portland, and David H. Blunt, Salem.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

## FORT, J.

This post-conviction proceeding challenges the validity of petitioner's plea of guilty to the crime of possession of dangerous drugs and resulting judgment of seven years' imprisonment. She had no prior record. No appeal was taken therefrom. The post-conviction court, after a hearing, concluded she was denied due process of law under the Fourteenth Amendment because the trial judge on his own motion did not hold a hearing regarding her capacity to enter a knowing and voluntary plea when he knew or should have known of a substantial question regarding her competency.[1] The court entered an order directing that she be allowed to withdraw her plea of guilty and remanded the matter to the Washington County Circuit Court. The state appeals.

Former ORS 136.150(1) states:

"If before or during the trial in any criminal case the court has reasonable ground to believe that the defendant, against whom an indictment has been found or an information filed, is insane or mentally defective to the extent that he is unable to understand the proceedings against him or to assist in his defense, the court shall immediately fix a time for a hearing to determine the defendant's mental condition. * * *"

---

[1] The actual hearing in the post-conviction court was conducted before the Honorable Douglas L. Hay. Judge Hay, however, died before he had occasion to enter written findings or judgment herein. Thereafter by stipulation of the parties the matter was submitted to the Honorable Hall S. Lusk, sitting by appointment as Circuit Judge pro tempore, for decision based upon his independent consideration of the transcript of the hearing held before Judge Hay and the exhibits, some 15 in number, introduced therein.

In *State v. Taylor,* 224 Or 106, 355 P2d 603 (1960), the Supreme Court considered that section and said:

"\* \* \* Whether an insanity hearing as provided for in the sections cited is advisable or necessary is within the discretion of the trial judge reasonably exercised. \* \* \*" 224 Or at 110-11.

*See also, State v. Arndt,* 1 Or App 608, 465 P2d 486 (1970).

The post-conviction court also found as a fact that:

"Subsequent to the entry of plea and before sentencing the trial judge was made aware by \* \* \* [petitioner's attorney] of a substantial question regarding petitioner's competency to enter a knowing and voluntary plea. The trial judge did not hold a hearing or make a finding regarding petitioner's competency to enter a plea."

The state concedes that

"\* \* \* [a]t no time did the trial court hold a separate competency hearing. At no time did the post-conviction court find that the evidence established Mrs. Brady's incompetence and in fact refused to reach the issue."

It urges, however, that

"[a] mere failure of the trial court to have held a separate competency hearing is not an abuse of discretion and consequently is not sufficient to justify post-conviction relief. At best petitioner's claim is one of statutory noncompliance and in any event resulted in harmless error."

Following her arrest the petitioner was indicted for involvement in the manufacture and distribution of dangerous drugs. Several charges were filed against her both in the state courts and in the federal court. In connection with the federal charges she was exam-

ined by at least three psychiatrists. Two of their reports indicated petitioner did not have the mental capacity to commit any crime. Orally, however, both psychiatrists indicated to the federal authorities she would probably be able to assist in her defense. On one of the state charges she was arraigned before another circuit judge sitting in the same circuit. That judge ordered that she be examined and a report furnished by the authorities at Dammasch State Hospital.

In the case at bar the defendant appeared for arraignment on an indictment which charged her, together with four others, with a related offense. At that time the state, pursuant to her waiver, filed an information charging her with the crime of possession of dangerous drugs. This was done as the end result of a process of plea bargaining relating to the disposition of all the charges both in the state and federal courts. The court was advised of this and carefully and properly examined both counsel and the defendant personally concerning it in order to determine the voluntariness of her act both in waiving indictment and in entering her plea. At its conclusion the court accepted the waiver and, upon her entering her plea of guilty, accepted that plea also. Both counsel recommended a presentence investigation. The court upon inquiry learned the defendant had been in custody pursuant to the various charges for approximately six months. Accordingly, it expressed reluctance at a further long delay. It was agreed that counsel would assist in expediting the requisite data. The matter was then continued.

At no time during the arraignment or plea was the court advised of any of defendant's prior mental history nor concerning either her submission to recent

psychiatric examinations at the order of other judges, or of their results. We do not condone the failure of counsel both for the state and for the defendant to have brought these matters to the attention of the court at the time of the arraignment. It was the clear duty of each of them to have done so. Indeed, it would have been best had they done so jointly beforehand.

During the interval following the arraignment and before sentence, the court, however, was furnished with several medical reports. The documents included information indicating that she had a long history of serious mental problems. This was evidenced by reports from the Menninger Clinic, the Hacker Clinic and Dammasch State Hospital. They also included very recent reports made by different psychiatrists to Judge Solomon of the United States District Court pursuant to his request and to Judge Pihl, also a Washington County circuit judge, on the other charges then pending against her. These reports, though conflicting, contained such statements as:

> "* * * Diagnostic classification at this time in my mind would best be met by 316.3 dissocial behavior.",

and

> "It is this examiner's opinion that this woman is mentally disturbed, and that her primary disturbance is that of a schizophrenic disorder, chronic, undifferentiated type. It is my view that she is possessed with such a degree of disturbance, and was so possessed of such disturbance at the time of her involvement with the persons manufacturing illicit drugs, that she would be unable to conform her acts to the requirements of the law. * * *",

and

> "* * * Needless to say her judgment is completely unreliable * * *."

The post-conviction judge in his memorandum opinion said:

"I do not, of course, attempt to determine whether or not this evidence establishes her incompetency, nor to weigh the apparently conflicting views of Dr. Shanklin and the physicians at Dammasch Hospital as against those of Dr. Dixon and Dr. Davis. For the purposes of this case it is enough that the evidence, as I view it, presents a substantial question of the petitioner's competency to enter a plea of guilty. * * *"

 We agree. *Pate v. Robinson,* 383 US 375, 86 S Ct 836, 15 L Ed 2d 815 (1966) ; *Rhay v. White,* 385 F2d 883 (9th Cir 1967). Here the uncontradicted evidence clearly indicated that there was indeed "reasonable ground" for the court to believe that the defendant was mentally incompetent "to the extent that she was unable to understand the proceedings or to assist in her defense" at the time she entered her plea of guilty. Former ORS 136.150(1). Accordingly, the court should sua sponte have held the hearing contemplated by the statute. A primary purpose of holding a hearing is to afford to the defendant the rights of confrontation and cross-examination guaranteed by the Sixth Amendment. *United States v. Wade,* 388 US 218, 87 S Ct 1926, 18 L Ed 2d 1149 (1967), *State v. Jones,* 11 Or App 129, 500 P2d 1225 (1972), Sup Ct *review denied* (1973). Here not only was no hearing held but the trial court made no finding at all concerning her competency. In *State v. Arndt,* supra, relied upon by the state, the trial court did make an express finding, and the entire matter of the defendant's competency related to his conduct in the courtroom during the trial. There the defendant personally took the stand and expressly denied during the trial that the dosages of Thorazine

he had taken during the trial had affected his ability fully to participate in the trial. That case is not in point here.

Additionally there is here necessarily included the question of her competency to execute the written waiver of indictment, which the court accepted just prior to the arraignment and entry of her plea of guilty. Inherent here also, of course, was her competency to waive her constitutional right to trial by jury, implicit in her plea of guilty.

In *Huffman v. Alexander,* 197 Or 283, 251 P2d 87, 253 P2d 289 (1952), the court in a habeas corpus proceeding considered the validity of a waiver of indictment and said:

> "While the provision concerning indictment in the Fifth Amendment is inapplicable to state prosecutions, the same rule must be applied under Article VII, section 18 of the Oregon constitution.

> "It follows from the express language of the constitutional provision and from the authorities cited that unless a defendant validly waives indictment he cannot be tried upon information filed by the district attorney. A judgment rendered upon an information without waiver of indictment would be void. * * * We hold that the plaintiff's reply presents an issue of constitutional right. * * *" 197 Or at 301.

The court said further:

> "Although courts are reluctant to find that fundamental constitutional rights have been waived, it is nevertheless the rule that such rights may be waived. *Schick v. United States,* 195 US 65, 49 L ed 99. But the waiver to be valid must not be the product of duress or misrepresentation. It must be voluntary and must be understandingly made with knowledge by the party of his rights. In this connection the age, education, experience, mental

capacity, the nature of the charge, whether complicated or simple, the possible defenses available and other relevant circumstances will be considered if the case be taken to a federal court and should be considered in the state court if conflicts and intolerable delays are to be avoided. [Citations omitted.] In view of the allegations of plaintiff's reply and of his alleged illiteracy as testified to by him, the court erred in refusing to consider the validity of the waiver of indictment." 197 Or at 321-22.

We conclude therefore that the competency of the defendant to execute a valid waiver of indictment must also be determined as well as the validity of the plea of guilty. The jurisdiction of the court to have acted at all in the matter is dependent upon that.

■ There remains only the question of whether the court correctly concluded that the judgment and the plea of guilty must be set aside and the cause remanded to the trial court.

In *Pate v. Robinson,* supra, the court considered this problem in relation to the facts of that case, and after first concluding

"* * * that Robinson's constitutional rights were abridged by his failure to receive an adequate hearing on his competence to stand trial, * * *"

the court said:

"* * * It has been pressed upon us that it would be sufficient for the state court to hold a limited hearing as to Robinson's mental competence at the time he was tried in 1959. If he were found competent, the judgment against him would stand. But we have previously emphasized the difficulty of retrospectively determining an accused's competence to stand trial. *Dusky v. United States,* 362 U.S. 402 [80 S Ct 788, 4 L Ed 2d 824] (1960). The

jury would not be able to observe the subject of their inquiry, and expert witnesses would have to testify solely from information contained in the printed record. That Robinson's hearing would be held six years after the fact aggravates these difficulties. This need for concurrent determination distinguishes the present case from *Jackson v. Denno,* 378 U.S. 368 [84 S Ct 1774, 12 L Ed 2d 908] (1964), where we held that on remand the State could discharge its constitutional obligation by giving the accused a separate hearing on the voluntariness of his confession." 383 US at 386-87.

■ In the case at bar the problem presented is a different one. We are here first concerned with whether the defendant was competent to waive indictment by a grand jury. That was not involved in *Pate.* That of course is not a question for a jury. In the second place the defendant here expressly waived trial by a jury. In *Pate* the defendant was tried by jury. One question is whether or not she was competent to do so. That, too, is not a jury question. In the third place the defendant here entered a plea of guilty. In *Pate* the defendant pleaded both not guilty and not guilty by reason of insanity. Again here the question is whether she was competent to do so. That also is not a jury question. Finally, she waived indictment, was arraigned and entered her plea of guilty on February 19, 1971, and was sentenced March 11, 1971. This petition for post-conviction relief was filed on June 15, 1971. Thus, but four months elapsed between the day she waived indictment and entered her plea and the filing of this proceeding. In *Pate* the period was six years.

The ascertainment of the mental competence of a party is, apart from mental commitment and guardianship proceedings, most commonly an ex post facto determination. Obvious examples include the deter-

mination by a trier of fact of the mental capacity of a defendant in a criminal case at the time the crime was committed, where his sanity is in issue. Will contests are another, many requiring a determination of mental competence years earlier.

In *Wells v. United States,* 239 F2d 931 (DC Cir 1956), the Court of Appeals for the District of Columbia sitting in banc had occasion to consider the procedures to be followed under the Federal Code. Its holding is summarized in the annotation Mental Competency of Accused, 4 L Ed 2d 2077 at 2083-84:

"* * * The accused was tried and convicted of rape without any question being raised as to his mental competency to stand trial, but when he appeared for sentencing the judge expressed doubt regarding his competency and ordered a psychiatric examination; the psychiatrist found him to be suffering from undifferentiated psychosis with schizophrenic and psychopathic tendencies, and ultimately a hearing was held at which the psychiatrist testified, and a judicial determination was made, that the defendant was 'presently insane.' He was thereupon committed to a federal hospital, where he remained for some 3 years, at which time he was judicially determined to be competent to stand trial; no judicial determination was ever made as to whether he was competent when he was originally tried, nor did it appear that the psychiatrist made any investigation of his mental state then. Following the post-commitment determination that he was competent to stand trial, defendant was not tried again, but was sentenced on the earlier verdict, and, at that time, his counsel orally moved for a new trial upon the ground that there was doubt as to his mental capacity at the time of his trial and that there had been no judicial determination that he had then been competent. This motion having been denied, defendant ap-

pealed, and the court held that the interests of justice required the case to be remanded to the District Court with directions to determine judicially whether or not defendant was competent to stand trial at the time that he was tried. The court said that if it appeared that the psychiatric examinations made pursuant to the District Court's original order were inadequate to shed light on the state of defendant's competency at the time he was tried, the court should order whatever other examinations or inquiries seemed indicated in the premises. And, the court said, if, after a hearing, the District Court judicially determined that defendant was competent when tried, then, there having already been a determination that he was competent when sentenced, the conviction was to stand, while, if it was determined that he was incompetent when tried, the conviction should be vacated and a new trial ordered."

We conclude that the interests of justice and the intent of ORS 138.520 will be best served here by setting aside that portion of the post-conviction court's order vacating the judgment and plea of guilty and remanding the case to the Washington County Circuit Court. In lieu thereof we conclude that this matter should be remanded to the post-conviction court with instructions to conduct a hearing to determine whether or not the defendant was mentally competent at the time she executed the waiver of indictment, at the time of her arraignment, her waiver of trial by jury and the entry of her plea of guilty. If the court concludes that she was, then it should also determine whether she was mentally competent at the time of sentence. If it concludes she was, then this petition should be dismissed and the conviction and judgment will stand. No appeal was taken from that judgment.

If it determines that she was not mentally competent at the time of waiver of indictment, then the order should provide for vacation of the judgment of conviction and dismissal of the complaint. If found competent to waive but not to plead, the judgment and the plea must be set aside and the case returned to Washington County for entry of a new plea. If the post-conviction court concludes she was competent in the proceedings preceding imposition of judgment but incompetent at the latter time, then the judgment should be set aside and the case returned for further proceedings. See former ORS 136.160.

Affirmed in part, reversed in part and remanded.