**Glenda Jo VIRGIL, Petitioner—Appellant,**

v.

**Susan POOLE, Warden, Respondent—Appellee.**

No. 02–55717.

D.C. No. CV–99–00469–JTM/JAH.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 2003.

Decided Oct. 20, 2003.

Carrie L. Hempel, Los Angeles, CA, for Petitioner–Appellant.

Gil Gonzales, San Diego, CA, for Respondent–Appellee.

Before REINHARDT, FERNANDEZ, and RAWLINSON, Circuit Judges.

## MEMORANDUM *

Glenda Jo Virgil's claim that she was a victim of ineffective assistance of counsel fails, because Virgil has not demonstrated that her counsel's performance was constitutionally deficient.

The provisions of the Anti–Terrorism and Effective Death Penalty Act ("AED-PA") apply because Virgil filed her federal habeas petition after the statute's effective date. *See Slack v. McDaniel*, 529 U.S. 473, 481, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). To warrant habeas relief, Virgil must show that the state court's denials of her state habeas petitions were "contrary to, or involved an unreasonable application of, clearly established Federal law." *Lounsbury v. Thompson*, 340 F.3d 998, 1001 (9th Cir.2003) (citation omitted).

Investigation conducted by Virgil's trial counsel was reasonable under *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1986). He reviewed the documents and files prepared and compiled by Virgil's prior counsel; consulted with and retained the same investigator used by prior counsel; consulted a mental health professional; interviewed jurors from the aborted trial; and listened to audiotapes of prospective witnesses, including the taped sessions between Virgil and the prior defense expert. *Cf. Williams v. Taylor*, 529 U.S. 362, 395–96, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (finding ineffectiveness where defense counsel failed to conduct a thorough investigation). Defense counsel was not required to re-interview each potential witness to render effective assistance to Virgil.

By the same token, counsel was not ineffective when he chose to present one defense rather than another at trial. *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir.1998); *Hensley v. Crist*, 67 F.3d 181, 185 (9th Cir.1995).

AFFIRMED.

REINHARDT, Circuit Judge, dissenting.

REINHARDT, Circuit Judge.

I dissent. Glenda Jo Virgil is a battered woman who suffered four years of severe beatings and abuse at the hands of her common-law husband before she took his life in an act she says was committed in self-defense. Yet, because of her counsel's constitutionally deficient performance, the jury did not learn about the Battered Woman's Syndrome, its applicability to Virgil, or the extent of Garrett's repeated abuse.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Virgil's counsel had in his possession evidence that Virgil's father beat her repeatedly to the point of hospitalization and raped her when she was only twelve years old. Counsel knew that Virgil's abuse from her father was just her first physically and sexually abusive relationship in a line of abusive relationships ending with Garrett, a man who, allegedly, among other things, stabbed her in the neck with a broken coke bottle and in the leg with a hunting knife, shoved her hand through a glass window, and kicked her repeatedly as she lay by the side of the road for such an extended period of time that she believed she would die.

Virgil's prior counsel had retained three mental health experts who were prepared to testify that Virgil was a credible historian and a "battered woman" and that, on the night of Garrett's death, she had acted out of a reasonable fear that Garrett was going to kill her. When Virgil's counsel took over the case, he discarded this testimony. Not only did he fail to use it, he did not contact any of these experts or retain an expert of his own choosing to examine Virgil and make an assessment of her mental state on the night she shot Garrett.

Virgil's counsel had never put on a Battered Woman's Syndrome defense; he had no expertise in this area. Yet, he never interviewed a Battered Woman's Syndrome expert, and he never had a single mental health expert examine his client. *Bloom v. Calderon*, 132 F.3d 1267, 1277 (9th Cir.1997) (finding ineffectiveness where counsel neglected to provide for complete psychiatric examination).

Counsel made a personal determination early on that Virgil was "aggressive" and so could not be a battered woman. Yet, if he had consulted with a Battered Woman's

Syndrome expert, he would have learned, as the California courts have explicitly recognized, that it is not uncommon for women exposed to battering over a period of time to resort to counter-violence. *People v. Day*, 2 Cal.App.4th 405, 416, 2 Cal. Rptr.2d 916 (1992) *overruled on other grounds by People v. Humphrey*, 13 Cal.4th 1073, 56 Cal.Rptr.2d 142, 921 P.2d 1 (1996). Counsel's decision to completely abandon the Battered Woman's Syndrome defense, without consulting a single expert on the subject or having an expert of his own choosing examine Virgil was unreasonable. *Strickland v. Washington*, 466 U.S. 668, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because the decision was based largely on counsel's uninformed and unsupported conclusions about his own client, it is not entitled to this court's deference. *See Rios v. Rocha*, 299 F.3d 796, 806 (9th Cir.2002) (stating that "any decision to forgo a defense on the basis of unreasonable assumptions is not a reasonable decision or a strategic or tactical decision entitled to deference.") (internal citations omitted).

Virgil was prejudiced by her counsel's failures. It was crucial in this case for the jury to understand why on the night of the killing Virgil reasonably believed that Garrett was attempting to kill her or cause her serious injury. At the second trial, the prosecution successfully painted Virgil as the aggressor in the relationship and told the jury she could have easily left Garrett. If counsel had presented Battered Woman's Syndrome evidence, he could have rebutted the most common misperceptions about battered women – the very misperceptions that the prosecution presented to the jury – quite possibly changing the outcome of the trial. *Day*, 2 Cal.App.4th at 4118–20, 2 Cal.Rptr.2d 916 (holding that defense counsel's failure to introduce evi-

dence of BWS at trial was prejudicial because of the importance of the evidence to the rehabilitation of the battered woman's credibility).

For these reasons, I disagree with the majority's decision. Like the magistrate judge, who heard the extensive evidence, including the unpersuasive rationalizations of counsel who failed to investigate the battered woman's syndrome defense, I would grant the writ.[1]

---

1. In 2001, the California Legislature took an important step to help battered women, like Virgil, who, for various reasons, were denied the opportunity to present Battered Woman's Syndrome evidence in trials that commenced before 1992. The Legislature granted them the opportunity to file writs of habeas corpus so that the courts could determine whether evidence relating to the battered women's syndrome not introduced during trial was such that had it been presented the result of

the trial might have been different. Cal.Penal Code § 1473.5. This remedy may still be available to Virgil. If not, perhaps when Virgil comes before the parole board, it will be willing to consider the evidence her counsel failed to introduce at trial.

